UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARCOS A. SALDA,

      Plaintiff,

v.     Case No. 8:20-cv-98-AEP

ANDREW M. SAUL,
Commissioner of Social Security,

      Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.  Procedural Background**

Plaintiff filed an application for SSI (Tr. 171-75, 198-207). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 71-96, 99-109). Plaintiff then requested an administrative hearing (Tr. 110-12). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 31-70). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-30). Subsequently, Plaintiff requested review

from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 167-69). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.  Factual Background and the ALJ's Decision

Plaintiff, who was born in 1991, claimed disability beginning July 7, 2016 (Tr. 171). Plaintiff obtained a high school education (Tr. 37, 216). Plaintiff did not have any past relevant work experience (Tr. 61-62). Plaintiff alleged disability due to attention-deficit/hyperactivity disorder ("ADHD"), high-functioning autism, bipolar disorder, post-traumatic stress disorder ("PTSD"), social anxiety, and depression (Tr. 215).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 3, 2017, the application date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: autism spectrum disorder ("ASD") (high functioning), social anxiety disorder, ADHD, and bipolar disorder (Tr. 18). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: could understand, remember, and carry out simple instructions and maintain persistence for simple tasks throughout

a standard workday; should not work with the general public; should work in an environment with few day-to-day changes in terms of work processes, work duties, or work settings; and should not be required to have more than occasional interaction with coworkers or supervisors and such interactions should not be required to be more than work-related or superficial (Tr. 19). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 24). After concluding that Plaintiff possessed no past relevant work, the ALJ obtained an assessment from a vocational expert ("VE"). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform jobs existing in significant numbers in the national economy, such as a bagger, cleaner II, and marker (Tr. 25, 62). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 26).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable

legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (citation omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by failing to develop a full and fair record – specifically, by failing to properly weigh and evaluate the testimony of Plaintiff's

mother regarding Plaintiff's limitations with pace, shaking, self-harm, and meltdowns. Given such failure, Plaintiff contends that the ALJ did not properly assess Plaintiff's limitations and, in turn, did not pose a complete hypothetical question to the VE. Accordingly, Plaintiff argues that substantial evidence does not support the ALJ's decision.

Even though Social Security proceedings are inquisitorial rather than adversarial in nature, claimants must establish their eligibility for benefits. *Ingram*, 496 F.3d at 1269; 20 C.F.R. § 416.912(a). During the administrative process, therefore, a claimant must inform the SSA about or submit all evidence known to the claimant relating to whether the claimant is blind or disabled. 20 C.F.R. § 416.912(a). Though the claimant bears the burden of providing medical evidence showing she is disabled, the ALJ is charged with developing a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The ALJ maintains this basic obligation to develop a full and fair record without regard for whether the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). When the plaintiff demonstrates that the record reveals evidentiary gaps which result in unfairness or "clear prejudice," remand is warranted. *Id.* at 935; *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("Remand for further factual development of the record before the ALJ is appropriate where the record reveals evidentiary gaps which result in unfairness or clear prejudice.") (internal quotation and citation omitted); *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("However, there must be a showing of prejudice before it is found that

the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record.") (citation omitted).

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. § 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the

claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii), 416.945(a)(3); SSR 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

Then, at step five, the ALJ must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *see Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995); 20 C.F.R. § 416920(a)(4)(v). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted). There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy; namely, by applying the Medical Vocational Guidelines ("Grids") and by using a VE. *Phillips*, 357 F.3d at 1239-40. Typically, where the claimant cannot perform a full range of work at a given level of exertion or where

the claimant has non-exertional impairments that significantly limit basic work skills, the ALJ must consult a VE.  *See id.* at 1243.

When the ALJ utilizes the testimony of a VE, the ALJ must pose an accurate hypothetical to the VE that accounts for all of the claimant's impairments.  *Ingram*, 496 F.3d at 1270 (citation omitted).  If the ALJ properly rejects purported impairments or limitations, the ALJ need not include those findings in the hypothetical posed to the VE.  *Crawford*, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported").  For a VE's testimony to constitute substantial evidence, however, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.  *Wilson*, 284 F.3d at 1227.

As noted, Plaintiff contends that the ALJ failed to fully consider the testimony of Plaintiff's mother and, as a result, failed to properly set forth Plaintiff's RFC, leading to an inaccurate hypothetical to the VE.  Along with the medical evidence, the ALJ may consider evidence from nonmedical sources, such as a family member, about any issue pertaining to the claimant's claim.  20 C.F.R. § 416.913(4).  For example, the testimony of a family member can provide evidence of a claimant's subjective complaints, including pain.  *See Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006).  Notably though, where an ALJ fails to make an explicit finding as to a third party's testimony or statements, a court need not find error if the determination was implicit in the rejection of the claimant's testimony.  *Id.*; *see Iordan v. Comm'r, Soc. Sec. Admin.*, 579 F. App'x 775, 779 (11th Cir. 2014).

In this instance, Plaintiff's mother provided testimony during the administrative hearing regarding Plaintiff's limitations (Tr. 55-60). Upon questioning by Plaintiff's counsel, Plaintiff's mother stated that Plaintiff had autism, among other things, for which she worked with Plaintiff since the age of one (Tr. 56). According to Plaintiff's mother, Plaintiff stabilized somewhat during the past two to three years, although he continued to experience some fluctuations in his condition (Tr. 57). Plaintiff's mother did not believe that, a year or two prior to the hearing, Plaintiff could have performed the duties of the part-time job he currently held because, at that time, Plaintiff experienced depression and proceeded to harm himself at night (Tr. 57). She further indicated that, with his medication regimen, Plaintiff did not appear to shake or move as much as he used to when she would need to tell him to stop (Tr. 57). With respect to his ability to interact with others, Plaintiff's mother stated that Plaintiff got along well with a friend, his sisters, and his parents (Tr. 57-58).

With regard to Plaintiff's prior employment, Plaintiff's mother indicated that he used to get very stressed, cry, and experience meltdowns because other employees would push him to perform in a fast environment producing fast food (Tr. 58). As to his attempt to go to school, Plaintiff's mother stated that Plaintiff failed, even though he is a smart child, because he felt overwhelmed from the first semester and would either withdraw or fail classes (Tr. 58). Plaintiff's mother testified that Plaintiff would get really nervous in groups of people and would not

look people in the face but rather would look down, even when she accompanied him (Tr. 58-59).

In determining Plaintiff's RFC, the ALJ explicitly considered the testimony offered by Plaintiff's mother (Tr. 21).[1] Namely, in discussing the testimony of Plaintiff's mother, the ALJ acknowledged her statements regarding Plaintiff's apparent improvement and stabilization, Plaintiff's continued fluctuations in his condition, Plaintiff inability to perform the job that he was currently doing a year or two ago because of the nervousness and depression he experienced at that time that led to him hurting himself at night, and Plaintiff's ability to get along well with his friends and family (Tr. 21, 57). As Plaintiff asserts, however, the ALJ did not expressly address the testimony of Plaintiff's mother regarding Plaintiff's purported limitations with pace, shaking, self-harm, and meltdowns. Such omission does not warrant remand. Rather, the record, as considered and discussed by the ALJ, does not support the limitations set forth by Plaintiff's mother. Further, the ALJ specifically addressed Plaintiff's limitations regarding pace. Beyond that, as the Commissioner contends, the ALJ provided substantial evidence in support of the decision, including consideration of the testimony of Plaintiff and Plaintiff's mother, Plaintiff's treatment history, Plaintiff's medication regimen, Plaintiff's activities of daily living, and the medical opinions of record (Tr. 15-26).

---

[1] Plaintiff's reliance upon cases where the ALJ failed to consider a third-party's statement is thus misplaced.

11

Initially, the limitations identified by Plaintiff's mother do not find support in the record. Both Plaintiff and Plaintiff's mother testified that Plaintiff's condition was worse a few years prior to the hearing, including the issues with self-harm and shaking, but his condition improved upon receipt of a proper medication regimen (Tr. 20-21, 45, 57-59). As the ALJ discussed, once Plaintiff received proper mental health treatment and medication management, Plaintiff consistently reported a lack of manic symptoms, perceptual disturbances, and overt delusions, and, importantly, as of August 2017, Plaintiff reported a complete cessation of any self-harm (punching) behavior (Tr. 22-24, 371). Notwithstanding allegations regarding meltdowns, Plaintiff primarily presented as calm and cooperative (Tr. 340, 345-46, 350, 355, 359-60, 364, 368, 371, 373). Plaintiff also indicated that the medication regimen improved his focus, allowing him to tend to his daily responsibilities, work part-time, and function in his day-to-day life (Tr. 338, 342, 343, 346, 348, 351, 356). Indeed, Plaintiff testified that, even though he failed classes and stopped attending college courses in 2013 due to social anxiety and suicidal thoughts, he believed he now possessed the willpower to continue with schooling (Tr. 20, 44). Further, with the exception of a single statement by Plaintiff that he could not sit still for more than 5 minutes and treatment notations regarding Plaintiff exhibiting "occasional perioral movements" and appearing "fidgety" (Tr. 386, 389, 390), all of which occurred in April 2017, the record remains devoid of findings regarding Plaintiff's

...

shaking at any point following the alleged onset date.[2]  Given the lack of support in the record for the limitations articulated by Plaintiff's mother, the ALJ did not need to consider such limitations in setting forth the RFC or in posing hypotheticals to the VE.

Furthermore, with respect to pace, the ALJ specifically considered Plaintiff's ability to concentrate, persist, or maintain pace, finding that Plaintiff experienced moderate limitations as to those functional categories (Tr. 18).  As the ALJ explained, Plaintiff claimed that he experienced limitations in concentrating generally, focusing generally, and completing tasks, yet Plaintiff maintained the ability to drive, watch television, read on a daily basis, play video games, and use the internet (Tr. 18).  In setting forth the RFC, the ALJ included non-exertional limitations to account for Plaintiff's issues with concentration, persistence, or pace, limiting Plaintiff to understanding, remembering, and carrying out simple instructions and maintaining persistence for simple tasks throughout a standard workday in an environment with few day-to-day changes in terms of work processes, work duties, or work settings (Tr. 19).  The ALJ therefore did not fail to consider Plaintiff's limitations regarding pace.

Going further, the ALJ provided substantial evidence in support of his findings at steps four and five of the sequential evaluation.  For example, the ALJ

---

[2] The treatment and discharge notes from Plaintiff's partial hospitalization program in October 2016 reference reduced psychomotor activity with no extrapyramidal symptoms but do no indicate whether such activity involved shaking (Tr. 290-97).  Notably, however, Plaintiff denied tremors during that time (Tr. 294, 295).

13

highlighted the lack of significant mental health issues noted during treatment with Dr. Alan Feldman from November 2015 through October 2016 (Tr. 21, 303-18). Although, as the ALJ noted, Plaintiff experienced a decompensation episode that led to admission into the partial hospitalization program and intensive outpatient program in October and November 2016, the ALJ also noted that the treatment and discharge notes showed significant improvement (Tr. 21-22, 290-97). Following that, as the ALJ indicated, during a consultative examination in March 2017, Plaintiff demonstrated no abnormalities in thought content or thought process and his behavior was within normal limits (Tr. 22, 299-301). Likewise, as the ALJ thoroughly discussed, from at least July 2017 to September 2018, Plaintiff repeatedly and consistently reported some combination of improvements to his mood, anxiety, concentration, and focus with his medication regimen; no thoughts of self-harm; no manic symptoms; no suicidal ideations; fair insight and judgment; a reduction in social anxiety, with occasional residual symptoms; less irritability; and optimism about the future (Tr. 22-23, 338-80).

In setting for the RFC, the ALJ also considered the opinions of the state agency psychological consultants, affording their opinions only partial weight and providing Plaintiff with "the utmost benefit of the doubt" by adding additional restrictions, *i.e.* social limitations, beyond those identified by the state agency psychological consultants (Tr. 24, 71-81, 84-94). *See* 20 C.F.R. § 416.913a(b)(1). Additionally, the ALJ discussed Plaintiff's reports of activities of daily living (Tr. 20-21, 24). As the ALJ highlighted, Plaintiff maintained a number of daily activities

14

– including but not limited to going to a bookstore daily, volunteering for a political organization, planning events, seeing movies at movie theaters with friends, and working 20-25 hours at his part-time job – suggesting that his mental impairments were not as severe as alleged (Tr. 20-21, 24, 46-47, 50, 52-53). *See* 20 C.F.R. § 416.929(c)(3)(i).

Given the comprehensive consideration of the evidence of record, and the lack of support for the limitations suggested by Plaintiff's mother, the ALJ appropriately concluded that Plaintiff maintained a full range of work at all exertional levels with the stated non-exertional limitations (Tr. 19). Based on the correct RFC assessment, including the omission of limitations not supported in the record, the ALJ posed appropriate hypotheticals to the VE. *See Crawford*, 363 F.3d at 1161. To summarize, the ALJ properly considered the testimony of Plaintiff's mother, along with the rest of the evidence of record, in determining Plaintiff's RFC and ability to perform other work. In doing so, the ALJ applied the correct legal standards. Based on the foregoing, the ALJ's decision is supported by substantial evidence, and remand is unwarranted.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 23rd day of March, 2021.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record